IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SHIRLEY JERNIGAN, as wife and dependent of JOE JERNIGAN, JR., deceased, and SHIRLEY JERNIGAN, as Mother and next friend of J.N.J., a minor dependent of JOE JERNIGAN, JR., deceased, | ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 2:15-cv-363-WHA |
| THE CITY OF EUFAULA, ALABAMA, et al., | ) ) ) ) | (WO) |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. Introduction**

This cause is before the court on the Plaintiff Shirley Jernigan's Motion to Remand (Doc. # 7) and a supporting brief (Doc. # 8). Also before the court are a Response in Opposition (Doc. # 17) filed by Defendant The Heil Co., Inc. ("Heil") and the Plaintiff's Response thereto (Doc. # 19).

This action involves a worker's compensation claim against the City of Eufaula, Alabama, and a products liability tort claim against Heil. Both claims arise out of a workplace accident in which the Plaintiff's husband was killed while performing equipment maintenance. After Heil removed the suit to this court on the basis of federal diversity jurisdiction, and without obtaining the consent of the City of Eufaula, the Plaintiff filed the instant Motion to Remand, alleging that the City of Eufaula is a citizen of Alabama, as is the Plaintiff, and therefore complete diversity of citizenship does not exist in this case. Heil's removal and opposition to the

Motion to Remand are based on the premise that the City of Eufaula's citizenship should be disregarded, so its consent is not required for removal, and even if the City of Eufaula's citizenship is considered, this court should sever the two claims and retain jurisdiction over the products liability claim against Heil.

For the reasons to be discussed, the court finds that the Motion to Remand is due to be GRANTED.

## II. Motion to Remand Standard

Federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (1994); *Wymbs v. Republican State Exec. Comm.*, 719 F.2d 1072, 1076 (11th Cir. 1983), *cert. denied*, 465 U.S. 1103 (1984). As such, federal courts only have the power to hear cases that they have been authorized to hear by the Constitution or the Congress of the United States. *See Kokkonen*, 511 U.S. at 377. Because federal court jurisdiction is limited, the Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear. *See Burns*, 31 F.3d at 1095.

Because this case was originally filed in state court and removed to federal court, Defendant Heil bears the burden of proving that federal jurisdiction exists. *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001).

## III. Factual and Procedural Background

This action arises out of a workplace accident involving Plaintiff Shirley Jernigan's husband, Joe Jernigan, Jr. On December 23, 2014, Joe Jernigan, Jr. was performing maintenance on a garbage truck manufactured by Defendant Heil in his capacity as an employee for the city of Eufaula. He was killed in an accident due to an alleged malfunction of the truck.

On February 5, 2015, Joe Jernigan, Jr.'s widow, the Plaintiff, filed an action in the Circuit Court of Barbour County, Alabama as the wife and dependent of her deceased husband and as the mother and next friend of J.N.J., the minor dependent of Joe Jernigan, Jr.  The Amended Complaint, filed on April 23, 2015, alleged a worker's compensation claim against the City of Eufaula and two counts of wrongful death claims against Defendant Heil, as the manufacturer of the garbage truck involved in the accident.  On April 2, 2015, before the Complaint was amended to add claims against Heil, the City of Eufaula filed its Answer.  The City of Eufaula expressly admitted "the allegations of paragraphs 10 through 17 as set forth in the Complaint." (Doc. # 1-5 at 2 ¶ 5.)  Paragraphs 10 through 17 of the original Complaint comprised the entirety of the Plaintiff's allegations as to the worker's compensation claim.  (Doc. # 1-4 at 3 ¶¶ 10–17.)

Defendant Heil removed the case to this court on May 26, 2015.  The parties agree that the City of Eufaula did not consent to the removal.  The Plaintiff's Motion to Remand followed on June 23, 2015.

## IV. Discussion

Defendant Heil argues that the City of Eufaula should not be considered a citizen of Alabama because it was acting as an "arm or alter ego of the state" in the context of this case. Heil further argues that even if the City of Eufaula was not acting in that capacity, the court should use its discretion to sever the claims and remand only the worker's compensation claim to state court.  Finally, Heil argues that the Plaintiff's allegation of improper removal due to lack of consent from the City of Eufaula is without merit because the claims and Defendants in the case have been misjoined.

"Except as otherwise expressly provided by Act of Congress," a defendant may remove from state court any civil case that could have originally been brought in federal court.  28

U.S.C. § 1441(a).  District courts have original jurisdiction over civil actions where the amount in controversy exceeds $75,000 and the action is between citizens of different states.  28 U.S.C. § 1332.  "Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant."  *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).  It is undisputed that the amount in controversy requirement is met in this case.

### A. The City of Eufaula is a citizen of Alabama for the purposes of federal diversity jurisdiction.

The Plaintiff's Motion to Remand is based primarily on the contention that there is no complete diversity of citizenship because she is a citizen of Alabama, as is the City of Eufaula.  Defendant Heil argues that the City of Eufaula should not be considered in determining whether there is complete diversity of citizenship in this case because it was acting as an "arm or alter ego of the state" in the context of this case.

The United States Supreme Court has held that "a political subdivision of a State, unless it is simply 'the arm or alter ego of the state,' is a citizen of the State for diversity purposes."  *Moor v. Alameda Cnty.*, 411 U.S. 693, 717 (1973) (footnote and citations omitted).  The parties agree that in the Eleventh Circuit, "the Eleventh Amendment immunity analysis is applicable to determinations of citizenship for the purpose of diversity jurisdiction."  *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 412 (11th Cir. 1999).  The Plaintiff argues that "[u]nder federal and Alabama law, municipalities are classified as political subdivisions; not as arms or alter egos of the State."  (Doc. # 8 at 4 ¶ 8.)  Heil responds that although this may be the general presumption, this case fits into the "arm or alter ego" exception, based on a required context-specific inquiry.  Heil argues that how state law treats an entity is critical, that Alabama treats cities as "arms or alter egos of the state" when they are performing public functions such as garbage disposal, and

4

that since the decedent in this case worked in the garbage disposal field, the City of Eufaula should be considered an arm or alter ego of the state in the context of this case.

      Heil's argument is faulty.  The argument relies on a context-specific inquiry, but it uses out-of-context quotations to create an argument unsupported by law.  To be sure, the exception urged by Heil does exist, as the United States Supreme Court allowed for the possibility that a municipality could conceivably act as an arm or alter ego of the state in *Moor*.  411 U.S. at 717.  However, the Plaintiff is also correct that courts typically contrast political subdivisions—that is, counties and municipalities—with entities that are considered arms or alter egos of the state.  *See, e.g.*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989) ("States are protected by the Eleventh Amendment while municipalities are not."); *Tuveson v. Fla. Governor's Council on Indian Affairs*, 734 F.2d 730, 732 (11th Cir. 1984) ("Eleventh Amendment immunity does not extend to independent political entities, such as counties or municipalities. . . .  [S]tate law provides assistance in ascertaining whether the state intended to create an entity comparable to a county or municipality or one designed to take advantage of the state's Eleventh Amendment immunity."); *Holloway v. Water Works & Sewer Bd. of Town of Vernon*, 24 F. Supp. 3d 1112, 1115 (N.D. Ala. 2014) ("In other contexts [aside from the ADEA], municipalities are treated differently from arms of the state.");  *Edmund v. City of Fort Myers*, No. 2:10-CV-474-FTM-29, 2011 WL 6005281, at *1 (M.D. Fla. Dec. 1, 2011) ("[A]n 'arm of the state' is typically contrasted with a county or municipality, which are not entitled to Eleventh Amendment protection.").

      The exception urged by Heil is not as broad as it argues, and it must overcome the precedent cited above to convince the court that the general rule that Eleventh Amendment immunity does not protect municipalities is applicable here.  Heil has correctly noted that

"[w]hether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003). In the Eleventh Circuit, courts must use "four factors to determine whether an entity is an 'arm of the State' in carrying out a particular function: (1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Id.* at 1309. Whether an entity is an arm of the state is "ultimately a question of federal law[, but] the federal question can be answered only after considering provisions of state law." *Id.*

Based on this case law, Heil argues that the court "must look to how Alabama Courts have treated municipalities in the context of trash collection activities to determine whether Eleventh Amendment immunity would apply to claims arising from those activities." (Doc. # 17 at 4–5.) This assertion misconstrues the *Manders* test. All four factors in the *Manders* test illustrate that the inquiry is aimed at determining the structural relationship between the state and the entity, by looking to how state law defines the entity, what degree of control the entity exerts, the source of funding, and responsibility for judgments against the entity. As the Eleventh Circuit stated in *Tuveson*, "state law provides assistance in ascertaining whether the state intended to create an entity comparable to a county or municipality or one designed to take advantage of the state's Eleventh Amendment immunity." 734 F.2d at 732. It is evident that the Eleventh Circuit views municipalities as distinct from entities protected by Eleventh Amendment immunity.

Heil has cited language from the Alabama Supreme Court to support its argument that under state law, cities involved in performing public functions such as garbage collection are

6

"instrumentalities" of the state.  Specifically, it cites the decision in *Cartee v. Hubbard* for the proposition that "[i]n the exercise of its public functions [a municipality] is an instrumentality of the state."  155 So. 2d 309, 311 (Ala. 1963) (alterations taken from Heil's quotation, Doc. # 17 at 5.)  According to Heil, this means that "when a municipality is performing public, governmental functions it is entitled to Eleventh Amendment immunity for claims relating to these functions." (Doc. # 17 at 5.)  This conclusion is problematic.  Heil fails to account for the fact that the *Cartee* decision had nothing to do with the Eleventh Amendment; instead it concerned a mandamus action involving a dispute over whether an individual was properly appointed chief of police.  *Cartee*, 155 So. 2d at 310.  The court is not persuaded that importing this quotation from a case involving an entirely unrelated context is a sufficient basis to establish that the City of Eufaula is "an arm of the state" in the Eleventh Amendment immunity context.

     Heil has not cited any federal case law, or even Alabama case law, related to Eleventh Amendment immunity, to support its assertions.  An examination of relevant federal law illustrates that under the *Manders* test, municipalities in Alabama should not be considered to be arms of the state.  In a recent opinion, the Eleventh Circuit stated that Eleventh Amendment immunity "extends not only to the state itself, but also to state officers and entities when they act as an 'arm of the state.' . . . It does not, however, extend to counties, municipal corporations, or similar political subdivisions of the state."  *Lightfoot v. Henry Cnty. Sch. Dist.*, 771 F.3d 764, 768 (11th Cir. 2014) (internal quotations and citations omitted).  In a more detailed application of the *Manders* test, a Middle District of Florida opinion found that "[i]n Florida, a municipality has broad home rule and police powers, and is not an 'arm' of the State of Florida entitled to Eleventh Amendment protection."  *Edmund*, 2011 WL 6005281, at *2 (citation omitted).  This application looked to how municipalities are *defined* under state law, and found that their broad

7

home rule and police powers indicated they are not arms of the state. The powers of Alabama's municipalities are defined similarly to those in Florida. In Alabama, "[t]he legislature has granted cities and towns in Alabama certain broad and comprehensive police powers." *Alexander v. State ex rel. Carver*, 150 So. 2d 204, 206 (Ala. 1963).

Based upon Eleventh Circuit precedent stating generally that municipalities are not "arms of the state" as a categorical matter, and upon the fact that Alabama defines its municipalities as separate entities from the state, the court concludes that the City of Eufaula should not be considered an "arm or alter ego of the state" in this case. Heil's arguments are based on out-of-context quotations from irrelevant cases and are unpersuasive. Therefore, under *Moor*, the City of Eufaula should be considered a citizen of Alabama in this case. Therefore, complete diversity of citizenship does not exist. In the next section, the court will consider whether it should nonetheless sever the claims in this case and remand the worker's compensation claim while retaining jurisdiction over the tort claims against Heil.

### B. There has been no fraudulent joinder, and the court declines to sever the claims in order to cure defects in diversity jurisdiction.

Heil argues that even if the court considers the City of Eufaula to be a citizen of Alabama—which it does—it should use its discretion to sever the claims, retaining jurisdiction over the claims against Heil while remanding the worker's compensation claim against the City of Eufaula. Separately, Heil argues that its failure to obtain the consent of the City of Eufaula before removing the case is not fatal to removal because the City of Eufaula has been misjoined in this action and therefore the court should deny the Motion to Remand. In response, the Plaintiff argues that based on relevant case law, the court should not sever the case, and should remand it in its entirety to state court. Central to both parties' arguments is the issue of whether the claims involve "common questions of law or fact." The issue of misjoinder, along with the

8

appropriateness of severance, is a close one in this case. For the reasons set forth below, the court concludes that there has been no fraudulent joinder, meaning that it is not permitted to disregard the citizenship of the City of Eufaula. Resolving uncertainties in favor of remand, as is required in the Eleventh Circuit, the court concludes it is inappropriate to sever the case at this stage.

Under Fed. R. Civ. P. Rule 20, multiple defendants may be joined in one action if two conditions are met. First, it must be the case that "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. Rule 20(a)(2)(A). Second, it must be the case that "any question of law or fact common to all defendants will arise in the action." *Id.* Rule 20(a)(2)(B). Improper joinder, also called misjoinder, "may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds*, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1076 (11th Cir. 2000). In typical fraudulent joinder cases, a removing defendant establishes that either "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011). "A defendant's right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." *Tapscott*, 77 F.3d at 1360. Under *Tapscott*, misjoinder constitutes a third scenario in which fraudulent joinder may occur. However, not all misjoinder constitutes fraudulent joinder. The Eleventh Circuit stated in *Tapscott* that it "[did] not hold that

mere misjoinder is fraudulent joinder," but misjoinder in some situations can be "so egregious as to constitute fraudulent joinder." *Id[1]*.

This court has previously examined misjoinder in a case in a similar posture to the instant one. In that case, the plaintiff brought a worker's compensation claim against his employer and other tort claims, including products liability, against other defendants. *Brooks v. Paulk & Cope, Inc.*, 176 F. Supp. 2d 1270, 1273 (M.D. Ala. 2001) (Albritton, J.). Acknowledging that the worker's compensation claim was not removable and had to be remanded, the court turned to Rule 20 and *Tapscott* to determine whether it should remand the entire case or instead sever the tort claims from the worker's compensation claim. After examining those authorities and other case law, the court concluded that "[i]t appear[ed] that the Rule 20 requirements [were] met," because the plaintiffs "sought several liability against two defendants for damages sustained as a result of the same alleged work-related accident." *Id.* at 1276. Despite the differing nature of the relief available under each type of claims, the court found that "the claims seem[ed] to at least involve common questions of fact." *Id.* The court further noted that "the Rule 20 standard does not require that there be a basis for joint liability, but allows joinder also on the basis of only 'several' liability." *Id.* For those reasons, the court found there was no misjoinder present in the case. It also noted that even if misjoinder had been applicable, it could not "conclude that this misjoinder is sufficient to find that there has been fraudulent joinder in this case," because the

---

[1] The egregious misjoinder doctrine enunciated in *Tapscott* is unique to the Eleventh Circuit. [The Fifth, Seventh, Eighth, Ninth, and Tenth Circuits have all mentioned the doctrine, and it has received editorial criticism in some opinions. *See*, *e.g.*, *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 621–22 & n.4 (8th Cir. 2010), and cases cited therein. Each decision that has mentioned fraudulent misjoinder has declined to reach the issue, and thus these decisions neither reject nor adopt fraudulent misjoinder. *See Parson v. Johnson & Johnson*, 749 F.3d 879, 893 (10th Cir. 2014) (fraudulent misjoinder "has not yet been adopted" within the Tenth Circuit); *Anderson v. Bayer Corp.*, 610 F.3d 390, 394 (7th Cir. 2010) (finding that the court lacked jurisdiction to consider fraudulent joinder); *In re Prempro Prods. Liab. Litig.*, 591 F.3d at 622 ("We make no judgment on the propriety of the [fraudulent misjoinder] doctrine in this case, and decline to either adopt or reject it at this time."); *In re Benjamine Moore & Co.*, 318 F.3d 626, 630–31 (5th Cir. 2002) (expressly stopping short of reaching the issue of fraudulent misjoinder); *Cal. Dump Truck Owners Ass'n v. Cummins Engine Co., Inc.*, 24 F. App'x 727, 729 (9th Cir. 2001) ("For purposes of discussion we will assume, without deciding, that this circuit would accept the doctrines of fraudulent and egregious joinder as applied to plaintiffs.").]

misjoinder was not egregious, as it had been in the *Tapscott* case. *Id.* at 1277. The court determined that it should remand the entire case to state court. *Id.*

After *Brooks*, several other Alabama district courts followed its reasoning and concluded that worker's compensation claims could be properly joined with other tort claims arising out of the same work-related accident under Rule 20. In each case, the court remanded the entire case back to state court and declined to sever the claims. *See, e.g.*, *Phillips v. R.R. Dawson Bridge Co., LLC*, No. 2:14-cv-00480-LSC, 2014 WL 3970176, at *2–*3 (N.D. Ala. Aug. 12, 2014); *Watson v. Gen. Elec., Inc.*, No. CV-12-S-2661-NE, 2012 WL 5931884, at *7–*8 (N.D. Ala. Nov. 26, 2012); *Wingard v. Guillot Textilmaschinen GMBH*, No. 2:08CV342WKW, 2008 WL 4368884, at *4 (M.D. Ala. Sept. 23, 2008); *Williams v. CNH Am., LLC*, 542 F. Supp. 2d 1261, 1265–67 (M.D. Ala. 2008). In one decision, the court departed from *Brooks*, while recognizing that it, *Wingard*, and *Williams* "rejected similar assertions of fraudulent joinder of worker's compensation claims to third party tort claims." *Formosa v. Lowe's Home Centers, Inc.*, 806 F. Supp. 2d 1181, 1187–88 (N.D. Ala. 2011). In that decision, however, the court concluded that severance was proper in part because the plaintiff waived the right to remand based on procedural defects, by not moving to remand within thirty days of removal. *Id.* at 1192–93.

Misjoinder is a close issue in this case. The court is satisfied that the case involves a right to relief asserted against the Defendants "jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," as required by Rule 20(a)(2)(A). While there is no potential joint liability, there is a possibility of several liability for the reasons discussed in *Brooks*. The second part of the necessary inquiry, however, is one on which neither party has cited case law and which appears to the court to be a matter of first impression.

The second part of the Rule 20 inquiry is more complex, because unlike in *Brooks*, *Wingard*, and *Williams*, here, the City of Eufaula has admitted liability on the worker's compensation claim, and only the determination of damages remains as to that claim. It may be, as raised and argued by Heil, that there are no longer any "common questions of fact" because liability is decided as to worker's compensation and all that remains for a court to determine there is the ministerial act of calculating the statutorily provided death benefit. However, the court finds that if misjoinder has occurred, it is not "so egregious as to constitute fraudulent misjoinder," which is required under *Tapscott*. In making this determination, the court notes that any possible misjoinder was not present when the case was originally filed but has arisen only as a consequence of the actions of the City of Eufaula, *not* the Plaintiff. The original complaint included fictitious Defendants "whose wrongful or negligent misconduct caused or contributed to the death of the Plaintiff's decedent." The claims in the Amended Complaint arose out of the same work-related accident and contained common questions of fact, absent the City of Eufaula's admission of liability. The court finds that the fact that Heil was added after the City filed an Answer admitting liability is not sufficient to dictate a finding of egregiousness. Because any potential misjoinder is not egregious, the court cannot disregard the citizenship of the City of Eufaula on fraudulent misjoinder grounds. As the case currently stands, there is no complete diversity of citizenship.

Heil urges the court to sever the case even if it does consider the City of Eufaula to be an Alabama citizen. It argues that the court may sever a case "even for the purpose of retaining jurisdiction," citing *Formosa*, 806 F. Supp. 2d at 1187. The *Formosa* opinion cites *Ingram v. CSX Transportation, Inc.*, 146 F.3d 858, 862 (11th Cir. 1998), for that proposition, which itself cited the United States Supreme Court decision in *Newman–Green, Inc. v. Alfonzo–Larrain*, 490

U.S. 826, 837–838 (1989).  In considering the power of the court to sever claims to cure diversity jurisdiction defects, it is important to consider the context and exact nature of the holdings in *Newman–Green* and *Ingram*.  Both decisions pertained to the power of the courts of appeals to dismiss a dispensable, nondiverse party to cure such defects, though the *Ingram* decision compared that power to the authority of the district courts to remedy misjoinder under Fed. R. Civ. P. 21.  *Newman–Green*, 490 U.S. at 837–38; *Ingram*, 146 F.3d at 862.  The Supreme Court cautioned that "such authority should be exercised sparingly," and "the appellate court should carefully consider whether the dismissal of a nondiverse party will prejudice any of the parties in the litigation," *Newman–Green*, 490 U.S. at 837–38, and the Eleventh Circuit recognized that qualifying language.  *Ingram*, 146 F.3d at 862.

Thus, before the court is a situation in which, following the reasoning set forth in *Brooks*, the Amended Complaint sets out claims that can be properly joined under Rule 20.  The admission of liability by the City of Eufaula on the worker's compensation claim may have reduced or even potentially eliminated the common questions of fact in the claims.  Regardless, any misjoinder was not so egregious as to constitute fraudulent joinder, so the court cannot disregard the City of Eufaula's citizenship on that basis.

Furthermore, as the Plaintiff argues, Defendant Heil did not obtain the consent of the City of Eufaula before removing.  Under 28 U.S.C. § 1446(b)(2)(A), "all defendants who have been properly joined and served must join in or consent to the removal of the action."  Only egregious fraudulent joinder would permit the court to disregard the citizenship of the City of Eufaula.  There is a chance the Plaintiff could be prejudiced in having to litigate parallel cases in state and federal court, and the Supreme Court stated that courts should use the authority to sever in order to retain jurisdiction "sparingly."  *Newman–Green*, 490 U.S. at 837.  Additionally, "removal

statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns*, 31 F.3d at 1095.  Therefore, the court finds the Motion to Remand is due to be GRANTED.

## V. Conclusion

For the foregoing reasons, it is hereby ORDERED as follows:

1. The Plaintiff's Motion to Remand (Doc. # 7) is GRANTED.

2. This case is REMANDED to the Circuit Court of Barbour County, Alabama. The clerk is DIRECTED to take appropriate steps to effect the remand.

DONE this 18th day of August, 2015.

       /s/   W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE